**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **ATLANTIC CASUALTY INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO. 3:16-CV-00237** |
| **ARNOLD "BLU" SHIELDS, A/K/A ARNOLD LEO SHIELDS A/K/A BLU SHIELDS, INDIVIDUALLY, ARNOLD SHIELDS D/B/A GALVESTON SERVICE COMPANY, ARNOLD SHIELDS D/B/A BLU SHIELDS CONSTRUCTION, BLU SHIELDS CONSTRUCTION, LLC SUZANNE HUBBARD, DANIEL JURGENA, ROXANNE TOMAIOLO, JOSEPH COX, THOMAS WALSH, GINA F. DOMINIQUE, OSCAR URBINA, ROSE PATRICIA ANN SHIELDS, PATRICK HENDERSON, MELISSA CONKLING, SCOTT CONKLING, AND GALVESTON SERVICE COMPANY** | § § § § § § § § § § § § § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S
<u>ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT</u>**

TO THE HONORABLE COURT:

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty"), hereby files this Original Complaint seeking a declaratory judgment, and in support respectfully shows the Court as follows:

**I.**

**PARTIES**

1.     Atlantic Casualty is a corporation that is incorporated under the laws of North Carolina and has its principal place of business in North Carolina.  Atlantic Casualty is a citizen of North Carolina and is not a citizen of Texas.

2.     Defendant Arnold "Blu" Shields, a/k/a Arnold Leo Shields, a/k/a Blu Shields, an individual, is a citizen and resident of Texas, as Arnold "Blu" Shields resides in Texas City, Texas.  Arnold "Blu" Shields can be served at 22 – 9th Ave. N., Texas City, Texas 77590.  Arnold "Blu" Shields, a/k/a Arnold Leo Shields, a/k/a Blu Shields is not a citizen of North Carolina.

3.     Defendant Arnold "Blu" Shields d/b/a Galveston Service Company is a citizen and resident of Texas, as it is a Texas sole proprietorship, and its owner and member, Arnold "Blu" Shields, is a citizen and resident of Texas.  Arnold "Blu" Shields d/b/a Galveston Service Company's principal place of business is 22 – 9th Ave. N., Texas City, Texas 77590.  Arnold "Blu" Shields d/b/a Galveston Service Company can be served at 22 – 9th Ave. N., Texas City, Texas 77590.  Arnold "Blu" Shields d/b/a Galveston Service Company is not a citizen of North Carolina.

4.     Defendant Arnold "Blu" Shields d/b/a Blu Shields Construction is a citizen and resident of Texas, as it is a Texas sole proprietorship, and its owner and member, Arnold "Blu" Shields, is a citizen and resident of Texas.   Arnold "Blu" Shields d/b/a Blu Shields Construction's principal place of business is 22 – 9th Ave. N., Texas City, Texas 77590.  Arnold "Blu" Shields d/b/a Blu Shields Construction can be served at 22 – 9th Ave. N., Texas City, Texas 77590.  Arnold "Blu" Shields d/b/a Blu Shields Construction is not a citizen of North Carolina.

5.      Defendant Blu Shields Construction, LLC is a citizen and resident of Texas, as it is a limited liability company incorporated under the laws of the State of Texas, and whose members are Texas citizens and residents.  Blu Shields Construction, LLC's principal place of business is 22-9th Ave. N., Texas City, Texas 77590, and Blu Shields Construction, LLC may be served by serving its registered agent, Arnold Shields, at 22 9th Ave. N., Texas City, Texas 775990.  Blu Shields Construction is not a citizen of North Carolina.

6.      Defendant Suzanne Hubbard, an individual, is a citizen and resident of Texas, and resides at and can be served at 915 Hawthorne, Clear Lake Shores, Texas 77565.  Suzanne Hubbard is not a citizen of North Carolina.

7.      Defendant Daniel Jurgena, an individual, is a citizen and resident of Texas, and resides at and can be served at 915 Hawthorne, Clear Lake Shores, Texas 77565.  Daniel Jurgena is not a citizen of North Carolina.

8.      Defendant Roxanne Tomaiolo, an individual, is a citizen and resident of Texas, and resides at and can be served at 2010 Rimrock, Kemah, Texas 77565.  Roxanne Tomaiolo is not a citizen of North Carolina.

9.      Defendant Joseph Cox, an individual, is a citizen and resident of Texas, and resides at and can be served at 2010 Rimrock, Kemah, Texas 77565.  Joseph Cox is not a city of North Carolina.

10.     Defendant Thomas Walsh, an individual, is a citizen and resident of Texas, and resides at and can be served at 2102 Forest Glen Ln., League City, Texas 77573.  Thomas Walsh is not a citizen of North Carolina.

11.     Defendant Gina Dominique, an individual, is a citizen and resident of Texas, and resides at and can be served at 2102 Forest Glen Ln., League City, Texas 77573.  Gina Dominque is not a citizen of North Carolina.

12.     Defendant Oscar Urbina, an individual, is a citizen and resident of Texas, and resides at and can be served at 1615 13th St, Texas City, TX 77590.  Oscar Urbina is not a citizen of North Carolina.

13.     Defendant Rose Patricia Ann Shields, an individual, is a citizen and resident of Texas, and resides at and can be served at 22 – 9th Ave. N, Texas City, Texas 77590.  Rose Patricia Ann Shields is not a citizen of North Carolina.

14.     Defendant Patrick Henderson, an individual, is a citizen and resident of Texas, and resides at and can be served at 2512 8th Ave. N., Texas City, Texas 77590.  Patrick Henderson is not a citizen of North Carolina.

15.     Defendant Scott Conkling, an individual, is a citizen and resident of Texas, and resides at and can be served at 5011 Bland Street, Seabrook, Texas 77586-1937.  Scott Conkling is not a citizen of North Carolina.

16.     Defendant Melissa Conkling, an individual, is a citizen and resident of Texas, and resides at and can be served at 5011 Bland Street, Seabrook, Texas 77586-1937.  Melissa Conkling is not a citizen of North Carolina.

17.     Galveston Service Company, on information and belief, is not an incorporated entity.  Galveston Service Company is believed to be the sole proprietorship of Arnold Shields, and is a citizen and resident of Texas, doing business in Texas wherein its principal office is located at 22 – 9th Ave. N., Texas City, Texas 77590.  Its owner, Arnold "Blu" Shields, is also a citizen and resident of Texas, located at 22 – 9th Ave. N., Texas City, Texas 77590.  Galveston

Service Company can be served by serving its owner, Arnold Shields at 22 – 9th Ave. N., Texas City, Texas 77590.   Galveston Service Company is not a citizen of North Carolina.

## II.
## JURISDICTION

18.     The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiff is a citizen of a different state than each Defendant, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

19.     The Court has personal jurisdiction over all Defendants because they are citizens and residents of the state of Texas.

## III.
## VENUE

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), as Defendants reside in Galveston County, Texas, and the Policies were issued to Blu Shields d/b/a Galveston Service Company to an address in Galveston County, which is within this judicial district.

## IV.
## BACKGROUND AND FACTS

21.     Paragraphs 1-20 set forth above are incorporated herein by reference.

22.     Atlantic Casualty brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

23.     Atlantic Casualty issued policy L076002421-5 (effective 8/2/12 to 8/2/13) ("2012 Policy"), L076004045 (effective 8/5/13 to 8/5/14) ("2013 Policy"), and policy L076004045-2 (effective 8/5/14-8/5/15) ("2014 Policy") to Blu Shields d/b/a Galveston Service Company. The 2012 Policy, 2013 Policy, and 2014 Policy are referred to herein as the Policies.

24.     This declaratory judgment action arises from claims asserted against Arnold "Blu" Shields, individually, Arnold Shields d/b/a Galveston Service Company, Arnold Shields

d/b/a Blu Shields Construction, Blu Shields Construction, LLC, Oscar Urbina, Rose Patricia Ann Shields, and Patrick Henderson (collectively the "Shields Entities") by Suzanne Hubbard, Danial Jurgena, Joseph Cox, and Roxanne Tomaiolo, in a Texas state court lawsuit originally filed by the Shields Entities against Hubbard, Jurgena, Cox, and Tomaiolo.  This state court lawsuit is styled and numbered *Arnold Shields, individually, Arnold Shields d/b/a Galveston Service Company, Arnold Shields d/b/a Blu Shields Construction, and Blu Shields Construction LLC v. Commercial State Bank, Douglas Favor, Scott Conkling, Melissa Conkling, Suzanne Hubbard, Daniel Jurgena, Roxanne Tomaiolo, Joseph Cox, Thomas Walsh and Gina F. Dominique*, cause number 2015-06750 in the 129th District Court of Harris County, Texas ("Harris County Lawsuit").

25.     Thomas Walsh and Gina F. Dominique also asserted claims against Arnold "Blu" Shields, individually and d/b/a Galveston Service Company and d/b/a Blu Shields Construction, and Blu Shields Construction, LLC in the Harris County Lawsuit.  Another lawsuit, filed in Galveston County, Texas, is styled and numbered *Suzanne Hubbard, Daniel Jurgena, Joseph Cox, and Roxanne Tomaiolo v. Arnold "Blu" Shields, individually, Blu Shields Construction LLC and Galveston Service Company*, cause number 14-CV-1048 in the 122nd District Court of Galveston County, Texas ("Galveston Lawsuit").  The claims asserted by Hubbard, Jurgena, Cox, and Tomaiolo are similar in both the Harris County Lawsuit and Galveston County Lawsuit.

26.     Scott and Melissa Conkling brought suit against Arnold "Blu" Shields and Blu Shields Construction, LLC in a lawsuit styled and numbered *Scott Conkling and Melissa Conkling v. Blu Shields Construction, LLC*, cause number 15-CV-0112 in the 56th Judicial District Court of Galveston County ("Conkling Lawsuit").  Atlantic Casualty seeks a declaration

of no coverage under the Policies for defendants for the claims made in the Harris County Lawsuit, Galveston Lawsuit, and Conkling Lawsuit.

27.     In the Harris County Lawsuit, Suzanne Hubbard, Daniel Jurgena, Roxanne Tomaiolo, and Joseph Cox ("Hubbard Counter-Plaintiffs") allege in their Second Amended Counterclaim that counter-defendants include Arnold Shields, Arnold Shields d/b/a Galveston Service Company, Arnold Shields d/b/a Blu Shields Construction, Blu Shields Construction, LLC, Rose Patricia Ann Shields, Oscar Urbina, and Patrick Henderson ("Shields Entities").[1] The Hubbard Counter-Plaintiffs allege that Arnold Shields is untrustworthy and dishonest, and claimed to them that he, his wife, Oscar Urbina and Patrick Henderson would work together, and have extensive home building experience.  Arnold Shields was allegedly dishonest, deceptive, and incompetent, and failed to perform work he promised to perform and that he was paid to perform, and committed acts of fraud.  His actions were allegedly negligent, fraudulent, intentional and his misrepresentations were made knowingly.  The Shields Entities allegedly breached express and implied warranties and engaged in unconscionable conduct, which damaged the Hubbard Counter-Plaintiffs.

28.     Specifically, Arnold Shields allegedly prepared a series of written documents from February 21, 2013 through August 31, 2013, relating to a contract, construction draw schedule, and elevation certificate for home to be built by Hubbard and Jurgena.  On March 7, 2013, Hubbard and Jurgena claim they paid Shields $26,000, and Shields promised the homeowners in writing that this amount would be reimbursed to them through the term of the contract.  Allegedly, the written contracts provided by Shields stated that Shields would

---

[1] The Galveston Lawsuit asserted claims against Arnold "Blu" Shields, Oscar Urbina, Rose Patricia Ann Shields, Patrick Henderson, Blu Shields Construction, LLC, and Galveston Service Company.  These individuals and entities will also be referred to herein as the "Shields Entities."  The Galveston Lawsuit alleged breach of contract and fraud claims against the Shields Entities.

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S**
<u>**ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT**</u> **– Page 7**

construct a new home, for a specific price, and that the home would include an elevator.  Shields allegedly promised Hubbard and Jurgena that the home would be completed in four to six months; and almost two years later, at the time the claims were asserted, the home had not been completed, there was no elevator, and Shields had not refunded the $26,000 to Hubbard and Jurgena.

29.     Hubbard and Jurgena also allege Shields made misrepresentations to them that were made knowingly, deceptively, and fraudulently.  Hubbard and Jurgena further claim that they were forced to pay subcontractors of Shields directly for items that Shields promised to pay and for which the contract required him to pay.

30.     Allegedly, ten months into the project, the Shields Counter-Defendants abandoned the job.  Hubbard and Jurgena discovered problems with the home, and they allegedly discovered that both of the 3rd floor balconies were leaking onto the second floor covered patios.

31.      Other alleged deficiencies include:

(1)     Bathtub will not hold water.

(2)     Interior and exterior painting not completed.

(3)     Water drainage issues.  Swells do not drain and will have to be redone.

(4)     Laminate floor dips are over uneven subflooring.

(5)     Porch rails are not secured properly.

(6)     Electrical lights are not wired properly.

(7)     The front porch rail is out of alignment.

(8)     Roof leaks – 3rd level decks.  The fascia board traps water and the weather guard was not installed properly.  The 3rd level deck facing the back of the house was constructed the same way and will require repairs.  Another

contractor attempted to repair the leak but it continues to leak. The rails and floor boards must be removed and the cost is estimated to be in excess of $1,000 for both patios.

(9)     A plumbing drain line runs through the master bedroom.

(10)    The charge was increased for a dormer.

(11)    Shields allegedly represented the home would be an "Energy Efficient" home, subject to tax benefits. Shields allegedly has failed to provide the documentation to receive the tax benefits.

32.     Hubbard and Jurgena assert a breach of contract cause of action against the Shields Entities. The Shields Entities' failure to obtain the proper elevation was allegedly negligent and grossly negligent, and Hubbard and Jurgena seek their attorneys' fees. Hubbard and Jurgena also assert a fraud cause of action against the Shields Entities, claiming Shields knowingly made misleading and deceptive statements of facts to Hubbard and Jurgena. Hubbard and Jurgena also seek exemplary damages.

33.     In the Harris County Lawsuit, Cox and Tomaiolo claim that they paid $98,847.04 to the Shields Entities to build a restaurant, but the Shields Entities did nothing more than place some pilings in the ground. Allegedly, the Shields Entities failed and refused to remit the money to Cox and Tomaiolo. Shields also allegedly made representations to Cox and Tomaiolo that were made knowingly and fraudulently.

34.     Cox and Tomaiolo requested a refund of their money, but their calls and emails were not returned and no money was returned. Cox and Tomaiolo claim the representations made to them were fraudulent, causing economic damages. Cox and Tomaiolo seek actual damages, exemplary damages, attorneys' fees, and treble damages against the Shields Entities.

35.     Walsh and Dominque assert in their counterclaim in the Harris County Lawsuit that Arnold Shields, Arnold Shields d/b/a Galveston Service Company, Arnold Shields d/b/a Blu Shields Construction, and Blu Shields Construction LLC (collectively, "Shields Counter-Defendants") are alter egos of one another, and claim Walsh entered into an agreement with the Shields Counter-Defendants for the construction of a home in Galveston County, Texas.

36.     Allegedly, Walsh paid the Shields Counter-Defendants over $50,000.   The Shields Counter-Defendants were allegedly paid, in total, $68,867.20 toward the construction of the Walsh and Dominque home, but the home was never built.   Allegedly, the Shields Counter-Defendants failed to provide an accounting of where the money was spent, and Walsh and Dominque believe that materials bought with this money were sold with the Shields Counter-Defendants pocketing the money.   Further, what little work was performed was allegedly defective, unworkmanlike, not in conformity with the plans or specifications, and unusable.

37.     Walsh and Dominique assert causes of action for common law fraud, violations of the Texas Deceptive Trade Practices Act, Breach of Contract, Money Had and Received, and seek their actual damages, punitive damages, treble damages, and attorneys' fees.   On information and belief, Walsh and Dominique were awarded attorneys' fees as part of their Motion to Dismiss the Shields Counter-Defendants' claims against them, and were awarded $8,400 in attorneys' fees for their motion to dismiss.

38.     In the Galveston Lawsuit, Hubbard, Jurgena, Cox, and Tomaiolo brought the same claims asserted in the Harris County Lawsuit against Arnold "Blu" Shields, individually, Oscar Urbina, Rosa Patricia Ann Shields, Patrick Henderson, Blu Shields Construction, LLC, and Galveston Service Company.

39.     The Conkling Lawsuit alleged that the Conklings first met Arnold Shields in 2009 when they were considering building a new home.  However, they were not able to get financing at that time, and in June 2014 the Conklings again spoke with Blu Shields, owner of Blu Shields Construction (Arnold "Blu" Shields and Blu Shields Construction are collectively "BSC").  Allegedly, BSC required a deposit of $35,000 for a construction deposit on or about July 3, 2014, via a check made payable to Galveston Service Company.  The Conklings claim they were told the deposit was refundable.  The Conklings claim that the only work performed at the new home site was the installation of an electrical pole for the job site, and occasional mowing of the property.

40.     The Conklings assert claims of conversion, fraud, money had and received, breach of contract, misappropriation of trust funds, breach of fiduciary duty, and a claim under the Texas Deceptive Trade Practices Act against BSC, and seek actual damages, treble damages, exemplary damages, and their attorneys' fees.  On information and belief, the Conklings have obtained a judgment against BSC.

## V.
## DECLARATORY JUDGMENT

41.     To the extent not inconsistent herewith, Paragraphs 1-40 are incorporated herein by reference.

42.     Atlantic Casualty seeks a declaration from this Court that it has no duty to defend or indemnify the Shields Entities, the Shields Counter-Defendants, and BSC for the claims asserted in the Harris County Lawsuit, Galveston Lawsuit, and Conkling Lawsuit and no duty to indemnify Hubbard, Jurgena, Cox, Tomaiolo, Walsh, Dominique, Scott Conkling and Melissa Conkling for the claims asserted in the Harris County Lawsuit, Galveston County Lawsuit, and the Conkling Lawsuit.  Arnold Shields, Arnold Shields d/b/a Galveston Service Company, and

Galveston Service Company are named as Defendants by Atlantic Casualty because a determination of coverage in this lawsuit would affect their rights under the Policies.  As a party to this suit, they will be bound by any judgment rendered in this declaratory judgment action with respect to coverage under the Policies.  Rose Patricia Ann Shields, Oscar Urbina, Patrick Henderson, Arnold Shields d/b/a Blu Shields Construction, and Blu Shields Construction, LLC are named as defendants because they may seek coverage under the Policies for the claims asserted in the Galveston Lawsuit, Harris County Lawsuit, and/or Conkling Lawsuit.  Defendants Hubbard, Jurgena, Cox, Tomaiolo, Walsh, Dominque, and Scott and Melissa Conkling are named as defendants by Atlantic Casualty because they seek relief in the Harris County Lawsuit, Galveston Lawsuit, and/or Conkling Lawsuit from all or certain of the Shields Entities, Shields Counter-Defendants, and/or BSC as alleged in each respective lawsuit.

43.    Atlantic Casualty seeks a declaratory judgment based on the following:

### A.
### NO TENDER OF THE LAWSUIT CLAIMS

44.    The claims asserted by Walsh and Dominique were not tendered to Atlantic Casualty and the Conkling Lawsuit was not tendered to Atlantic Casualty, and therefore Atlantic Casualty owes no coverage for such claims.  Further, Atlantic Casualty owes no defense obligation prior to the tender of any claim in the Harris County Lawsuit, Galveston Lawsuit, or Conkling Lawsuit.  There was never a tender by Rose Patricia Ann Shields, Oscar Urbina, Patrick Henderson, Arnold Shields d/b/a Blu Shields Construction, Blu Shields Construction, LLC of the Galveston Lawsuit, Harris County Lawsuit, and/or Conkling Lawsuit to Atlantic Casualty, and thus Atlantic Casualty owes no coverage for these claims.

45.    The Declarations of the Policies list the Named Insured as Blu Shields d/b/a Galveston Service Company.  The Policies state the following with respect to who is an insured:

*SECTION II – WHO IS AN INSURED*[2]

    1.    *If you are designated in the Declarations as:*

        a.   *An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.*
                \*\*\*
        *No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*

The Policies contain a Volunteer Workers Exclusion, which modifies Paragraphs 2.a and

2.b of Section II – Who Is An Insured, and states the following are also considered insureds:

    a.   *Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to conduct of your business. However, none of these "employees" is an insured for:*

        *(1) "Bodily injury" or "personal and advertising injury":*
            *(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" or while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business.*

            *(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;*

            *(c) For which there is any obligation to share damages with or repay someone who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or*

            *(d) Arising out of his or her providing or failing to provide professional health care services.*

        *(2) "Property damage" to property:*
            *(a) Owned, occupied or used by,*
            *(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by*

---

[2] Paragraph 4. of WHO IS AN INSURED (SECTION II) does not apply pursuant to endorsement CG 21 36 01 96.

*you, any of your "employees," any partner or member (if you are a joint partnership or joint venture), or any member (if you are a limited liability company).*

b. *Any person (other than your "employee"), or any organization while acting as your real estate manager.*

C. *Definition 20. "volunteer worker" of Section V – Definitions is deleted.*

*AGL-112 10 10* and *AGL-112 03 13*

46.     The Named Insured of the Policies is Blu Shields d/b/a Galveston Service Company; therefore, the Policies provide coverage for Arnold "Blu" Shields, an individual, and the conduct of a business of which Shields is the sole owner, along with Shields's wife. Shields's "employees" also qualify as insureds, but only for acts within the scope of their employment or while performing duties related to the conduct of the business.  To the extent any person or entity, including Blu Shields Construction, LLC, Arnold Shields d/b/a Blu Shields Construction, Galveston Service Company, Rose Patricia Ann Shields, Oscar Urbina, Patrick Henderson do not qualify as insureds under the Policies, there is no coverage for claims against them.

**B.**
**POLICY TERMS AND EXCLUSIONS**

47.     The Policies provide coverage to qualifying insureds for certain, defined "bodily injury" and "property damage" caused by an "occurrence" that a qualifying insured becomes legally obligated to pay.  However, this coverage is limited by the terms, definitions, limitations, conditions, and exclusions in the Policies.  The claims against the Shields Entities, Shields Counter-Defendants, and BSC are not "occurrences" resulting in defined "property damage," and thus are not covered.

48.     The Policies also allow Atlantic Casualty to determine its defense obligation using evidence extrinsic to the pleadings in the Galveston Lawsuit, Harris County Lawsuit, and Conkling Lawsuit.  The Policies state:

*SECTION I – COVERAGES*
*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

**1.**      **Insuring Agreement**
  **a.**      *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking covered damages.*  __**We will have the right, but not the duty to defend the insured against any "suit" for which we dispute coverage.**__  *We will have no duty to defend or indemnify the insured against any "suit" seeking damage for "bodily injury" or "property damage" to which this insurance does not apply.*

  *We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking "bodily injury" or "property damage," provided that extrinsic evidence does not contradict a claimant's pleaded allegation and provided that evidence relates to a discrete coverage issue under the policy and not a merits or liability issue.*  *We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:*
  *(1) The amount we will pay for damages is limited as described in* **Section III – Limits Of Insurance**; *and*
  *(2) Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under* **Coverages A** *or* **B** *or medical expenses under* **Coverage C.**
  **b.**      *This insurance applies to "bodily injury" and "property damage" only if:*
  *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
  *(2) The "bodily injury" or "property damage" occurs during the policy period.*

  \*\*\*
  *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under* **Supplementary Payments – Coverages A and B.**

*AGL – 077 06 09* and *AGL-077 03 13* [Emphasis added.]

The 2012 Policy further states:

## *LIMITATION – DUTY TO DEFEND*

*Where there is no coverage under this policy, there is no duty to defend any insured. We are entitled to all rights of reimbursement from you or any insured or indemnitee for sums paid under this policy if it is determined that there is no coverage under the terms, conditions, limitations or exclusions of this policy. Our determination regarding a defense obligation under this policy may be made on documentation, evidence, or information extrinsic to any complaint or pleading presented to us, provided such documentation, evidence or information does not contradict a pleaded allegation and provided such documentation, evidence or information relates solely to a discrete coverage issue under this policy.*

*For those qualifying as an additional insured by way of an additional insured endorsement, we have the right, but not the duty, to defend.* [Emphasis added.]

*AGL-056 10 10*

The 2013 and 2014 Policies further state:

## *LIMITATION - DUTY TO DEFEND*

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

### *COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*Where there is no coverage under this policy, there is no duty to defend any insured.*

*Our determination regarding a defense obligation under this policy may be made on documentation, evidence, or information extrinsic to any complaint or pleading presented to us, provided such documentation, evidence or information does not contradict a pleaded allegation and provided such documentation, evidence or information relates solely to a discrete coverage issue under this policy.*

*For those qualifying as an additional insured by way of an additional insured endorsement, we have the right, but not the duty, to defend.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED*

*AGL-056 3/13*

49.     Thus, Atlantic Casualty can determine its defense obligation using evidence extrinsic to the pleadings.

50.     To the extent that the Shields Entities, Shields Counter-Defendants, and/or BSC qualify as insureds and to the extent the claims against the Shields Entities, Shields Counter-Defendants, and/or BSC constitute "property damage" caused by an "occurrence," the Policies contain various exclusions that apply to exclude coverage for the allegations in the Harris County Lawsuit, Galveston Lawsuit, and Conkling Lawsuit.

51.     The Policies contain a Contractual Liability exclusion, which excludes coverage as follows:

> *SECTION 1 – COVERAGES*
>
> *COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
>
> \*\*\*
>
> 2.   *Exclusions*
>
> *This insurance does not apply to:*
>
> \*\*\*
>
> b.   *Contractual Liability*
>
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:*
>
> (1)   *That the insured would have in the absence of the contract or agreement; or*
>
> (2)   *Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred*

> *by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*
>
> (a)   *Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured" contract; and*
>
> (b)   *Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

52.     The Policies thus do not apply to "bodily injury" or "property damage" for which an insured is obligated to pay damages due to breach of contractual obligation.   The Policies' amended definition of "property damage" also excludes from the definition of "property damage" any breach of contract or breach of express or implied warranties, as well as deceptive trade practices or violation of consumer protection laws.   Therefore, because the pleadings in the Harris County Lawsuit, Galveston County Lawsuit, and Conkling Lawsuit do not contain facts supporting damages other than those arising from a contract, Atlantic Casualty seeks a declaration that the Shields Entities, Shields Counter-Defendants, and/or BSC are not entitled to a defense or indemnity under the Policies and that Hubbard, Jurgena, Cox, Tomaiolo, Walsh, Dominque, and the Conklings are not entitled to indemnity under the Policies.

53.     The Policies also contain exclusions for "Damage to Property," "Damage to Your Product," "Damage to Your Work," and "Damage to Impaired Property or Property Not Physically Injured" which exclude coverage for:

> *j.   Damage to Property*
>
> *"Property damage" to:*

(1) *Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

(2) *Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

(3) *Property loaned to you;*

(4) *Personal property in the care, custody or control of the insured;*

(5) *That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

(6) *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

*\*\*\**

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

k. *Damage to Your Product*

*"Property damage" to "your product" arising out of it or any part of it.*

l. *Damage to Your Work*

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

*This exclusion does not apply if the damaged work out of which the damage arises was performed on your behalf by a subcontractor.*

m. *Damage to Impaired Property or Property Not Physically Injured*

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

(1) *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

(2)      *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

n.  *Recall of Products, Work, or Impaired Property*

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

(1)  *"Your product";*
(2)  *"Your work"; or*
(3)  *"Impaired property";*

*If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

*** 

54.    The Policies provide the following definitions:

*SECTION V – DEFINITIONS*

*** 

8.  *"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*
    a.  *It incorporates your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*
    b.  *You have failed to fulfill the terms of a contract or agreement;*

    *if such property can be restored to use by:*

    a.  *The repair, replacement, adjustment or removal of your product" or "your work"; or*
    b.  *Your fulfilling the terms of the contract or agreement.*

9.  *"Insured contract" means:*

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S**
<u>**ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT**</u> **– Page 20**

    a. *A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";*

    b. *A sidetrack agreement;*

    c. *Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;*

    d. *An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;*

    e. *An elevator maintenance agreement;*

***

13. *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

***

17. *"Property Damage" means*

    a. *Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

    b. *Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
    <u>*However, "property damage" does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.*</u>
    <u>*"Property damage" does not include any cost or expense to repair, replace, or complete any work to any property that you, or any insured, are otherwise obligated to repair, replace or complete pursuant to the terms of any contract.*</u>   [Emphasis added, and as amended by endorsement AGL-106 06 09 and AGL-106 3/13.]

***

18. *"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:*

  a. *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*

  b. *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

***

21. *"Your product":*
 a. *Means:*
  *(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
   *(a) You;*
   *(b) Others trading under your name; or*
   *(c) A person or organization whose business or assets you have acquired; and*
  *(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

 b. *Includes:*
  *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*
  *(2) The providing of or failure to provide warnings or instructions.*

 c. *Does not include vending machines or other property rented to or located for the use of others but not sold.*

22. *"Your work":*
 a. *Means:*
  *(1) Work or operations performed by you or on your behalf; and*
  *(2) Materials, parts or equipment furnished in connection with such work or operations.*

 b. *Includes:*
  *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*
  *(2) The providing of or failure to provide warnings or instructions.*

***

55.     The Damage to Property exclusion precludes coverage because it is alleged that the Shields Entities', Shields Counter-Defendants', and/or BSC's work was poor and they never completed the work called for under its contract.   The Damage to Your Work exclusion excludes coverage to the extent the work was completed.   It is alleged that subcontractors were used, but there is no evidence that the subcontractors had the required insurance and provided the required indemnification as outlined in the Policies.   Thus, there is no coverage for damage to the Shields Entities', Shields Counter-Defendants', and/or BSC's work, even if completed by subcontractors.    Further, to the extent the Shields Entities, Shields Counter-Defendants, and/or BSC are allegedly liable for any alleged damages, and such damages arise out of a defect, deficiency, or inadequacy in the Shields Entities', Shields Counter-Defendants', and/or BSC's work or their failure to perform under its contract, these claims would be excluded under the "Damage to Impaired Property or Property Not Physically Injured" exclusion, as set forth above.

56.     Based on these exclusions, Atlantic Casualty seeks a declaration that there is no coverage for defendants under the Policies.

57.     The   2012   Policy   and   2013   Policy   contain   an   Independent Contractors/Subcontractors exclusion that provides as follows:

### EXCLUSION – INDEPENDENT CONTRACTORS OR SUBCONTRACTORS

*This insurance does not apply to any claims, loss, costs or expense arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.*

*AGL-005 10 10*

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S**
**ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT** – Page 23

58.     The 2012 Policy and 2013 Policy contain the following endorsement related to subcontractors:

### SUBCONTRACTORS – DEFINITION OF ADEQUATELY INSURED

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The classifications used in the policy containing the words "Contractors – Subcontracted Work" apply to that portion of the operations performed for or on behalf of any insured by "adequately insured" subcontractors.*

*This insurance does not apply to any claim arising from subcontracted work unless the insured can demonstrate:*

*1)      The subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:*

| | | |
|---|---|---|
| A. | General Aggregate Limit | |
| | (Other than Products – Completed Operations) | $1,000,000 |
| | Products – Completed Operations | |
| | Aggregate Limit | $1,000,000 |
| | Each Occurrence Limit | $1,000,000 |

*B.   Or the limits provided by this policy, whichever are less.*

*2)      A hold harmless agreement in favor of you has been executed with the subcontractor, for the subcontractor's negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the subcontractor; and/or*

*3)      You are endorsed to the subcontractor's Commercial General Liability policy as an additional insured for the subcontractor's negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the subcontractor.*

*If all of the above conditions are met, the subcontractor will be considered "adequately insured" and exclusion AGL-005 Exclusion – Independent Contractors/Subcontractors included in the AGL-CO, AGL-CA-CO, or the AGL-COXP combination form attached to this policy is deleted in its entirety.*

*All other terms and conditions remain unchanged.*

*AGL-051 (8/11)*

59.    The 2014 Policy contains the following endorsement:

### CONDITION – INDEPENDENT CONTRACTORS AND SUBCONTRACTORS

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:  COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The classifications used in this policy containing the words "Contractors Subcontracted Work" apply to that portion of the operations performed by or on behalf of any insured by independent contractor(s) or subcontractor(s).  There is no coverage for that portion of the operations performed for or on behalf of any insured by independent contractor(s) or subcontractor(s) unless Condition A or Condition B is met.*

*If Condition A or Condition B is not met, then this insurance does not apply to any claims, loss, costs or expense arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.*

*Condition A.*
*This insurance does not apply to any claim arising from subcontracted work unless the insured can demonstrate:*
*1)    The independent contractor or subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:*

| | |
|---|---|
| *A.  General Liability Limit (Other than Products Completed Operations)* | *$1,000,000* |
| *Products Completed Operations Aggregate Limit* | *$1,000,000* |
| *Each Occurrence Limit* | *$1,000,000* |

*B.  Or the limits provided by this policy, whichever are less; and*

*2)    A hold harmless agreement in favor of you has been executed with the independent contractor or subcontractor, for the (sic) their negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the independent contractor or subcontractor; and*

*3)    You are endorsed to the independent contractor's or subcontractor's Commercial General Liability policy as an additional insured for the independent contractor's or subcontractor's negligence or fault, the breach or violation of a statute, ordinance, governmental regulation,*

> *standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the independent contractor or subcontractor; and*
>
> 4) *You will obtain Certificates of Insurance from each independent contractor or subcontractor with evidence verifying the requirements of paragraphs 1 and 3 above. These certificates must be kept on file for a minimum of ten years.*
>
> *Condition B.*
> *If we verify operations were performed by independent contractor(s) or subcontractor(s) and they did not meet Condition A, we will use the total cost of work performed for you by such independent contractor or subcontractor as if it were payroll to calculate the appropriate premium for the specific classification based on our rates and rules in effect as of the inception date of the policy. It is your responsibility to pay any additional premium due.*
>
> *AGL-130 09 13*

60.    The Policies provide no coverage for any alleged claims arising from the work of subcontractors or independent contractors if these subcontractors were not adequately insured as required by the respective policy. The Galveston Lawsuit and Harris County Lawsuit claims by Hubbard and Jurgena allege that the Shields Entities used subcontractors. Atlantic Casualty repeatedly requested information from Arnold Shields showing that the subcontractors used on the homes were adequately insured as required by the Policies; no information regarding the subcontractor conditions was ever provided to Atlantic Casualty, which is a breach of the cooperation clause in the Policies. The cooperation clause states:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
> **\* \* \***
> 2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>    a. *You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:*
>       (1) *How, when and where the "occurrence" or offense took place;*
>       (2) *The names and addresses of any injured persons and witnesses; and*
>       (3) *The nature and location of any injury or damage arising out of the "occurrence" or offense.*
>    b. *If a claim is made or "suit" is brought against any insured, you must:*

(1) *Immediately record the specifics of the claim or "suit" and the date received; and*

(2) *Notify us as soon as practicable.*
*You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

**c.** *You and any other insured must:*

(1) *Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";*

(2) *Authorize us to obtain records and other information;*

(3) *Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and*

(4) *Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

**d.** *No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

61. Thus, because Arnold Shields failed to provide the requested information regarding the subcontractors, in violation of the provisions in the Policies, and the allegations claim that the Shields Entities used subcontractors, there is no coverage under the Atlantic Casualty Policies for the claims asserted in the Galveston Lawsuit and Harris County Lawsuit and/or Conkling Lawsuit.

62. The Policies contain an exclusion for expected and intended injuries. The 2012 Policy states:

### EXCLUSION – EXPECTED OR INTENDED

*Exclusion **2.a.** of the Commercial General Liability Coverage Form under* **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** *is deleted in its entirety and replaced by the following:*

**a.** **Expected Or Intended Injury**
*"Bodily injury" or "property damage" expected or intended from the standpoint of any insured.*

*AGL-068 06 09*

The 2013 Policy and 2014 Policy state:

## EXCLUSION – EXPECTED OR INTENDED

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*Exclusion **2. a.** of **SECTION I – COVERAGES, COVERAGE A –BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:*

**a. Expected Or Intended Injury**
*"Bodily injury" or "property damage" expected or intended from the standpoint of any insured.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED*

***AGL-068 3/13***

63.     Thus, to the extent any of the alleged damages in the Underlying Lawsuit are due to "property damage" expected or intended from the Shields Entities', Shields Counter-Defendants', and/or BSC's standpoint, there is no coverage under the Policies.

64.     The 2012 Policy also contains the following:

## CLASSIFICATION LIMITATION

*This insurance does not apply to and no duty to defend is provided for "bodily injury", "property damage", "personal and advertising injury" or medical payments unless the "bodily injury", "property damage", "personal and advertising injury" or medical payments arise out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.*

***AGL-015 1/08***

The 2012 Policy and 2013 Policy state:

## CLASSIFICATION LIMITATION

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This insurance does not apply to and no duty to defend is provided for "bodily injury," "property damage," "personal and advertising injury" or medical payments unless the insured can demonstrate the "bodily injury," "property damage," "personal and advertising injury" or medical payments arise out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED*

*AGL-015 10/10*

The 2014 Policy states:

## CLASSIFICATION LIMITATION

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This insurance does not apply to and no duty to defend is provided for "bodily injury," "property damage," "personal and advertising injury" or medical payments unless the insured can demonstrate the "bodily injury," "property damage," "personal and advertising injury" or medical payments arise out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements. The parties agree the definition(s) used for the classification(s) in the policy are those defined and maintained by the Insurance Services Offices (ISO).*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED*

*AGL-015 05 14*

65.     The Policies state the Classification of Blu Shields d/b/a Galveston Service Company includes Carpentry – Interior and Contractors – subcontracted work in connection with construction, reconstruction, repair or erection of buildings.  To the extent any of the alleged damages in the Galveston Lawsuit, Harris County Lawsuit, or Conkling Lawsuit arise out of

classifications that are not shown on the declarations or any endorsements for classification of operations, there is no coverage under the Policies.

66.    The Policies contain an Exclusion for Mental Injury.  The 2012 Policy states:

### EXCLUSION – MENTAL INJURY

*This insurance does not apply to any claim, loss, costs or expense for "bodily injury" or "property damage" arising out of emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the foregoing, or any similar injury unless it arises out of physical injury that occurs to that person.*

*AGL-073 10 10*

The 2013 Policy and 2014 Policy state:

### EXCLUSION – MENTAL INJURY

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This insurance does not apply to any claim, loss, costs or expense arising out of emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the foregoing, or any similar injury unless it arises out of physical injury that occurs to that person.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED*

*AGL-073 3/13*

67.    The Policies provide no coverage for damages arising out of emotional distress, mental anguish, mental distress, worry, inconvenience, dissatisfaction or any physical manifestation of the foregoing, unless it arises out of physical injury to that person.

68.    The Policies contain endorsement for injuries that were in process prior to the respective policy period.  The 2012 Policy states:

### *EXCLUSION – BODILY INJURY AND/OR PROPERTY DAMAGE - CLAIMS IN PROCESS*

**The following exclusion is added to 2. Exclusions** under **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

*This insurance does not apply to:*

    1.   *any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown:*

        *a.  which first occurred prior to the inception date of this policy; or*
        *b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*

    2.   *any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.*

*We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage," unless any insured can demonstrate this endorsement does not apply.*

***AGL-048 10/10***

The 2013 Policy and 2014 Policy state:

### *EXCLUSION – CLAIMS IN PROCESS*

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is added to **2. Exclusions** under **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY.***

*This insurance does not apply to:*

*1.     any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown.*
       *a.  which first occurred prior to the inception date of this policy; or*
       *b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*

2.      any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage," unless any insured can demonstrate this endorsement does not apply.

69.     Thus, there is no coverage for claims that occurred prior to the inception date of the respective policy.

70.     The 2012 Policy further excludes damages for punitive damages, and states:

### EXCLUSION – PUNITIVE DAMAGES

This insurance does not apply to any claim of or indemnification for punitive, exemplary and/or statutorily enhanced damages, including but not limited to, multiple damages.   If a "suit" seeking both compensatory and punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages, has been brought against you for a claim covered by this policy, we will provide defense for such action.   We will not have any obligation to pay for any costs, interest or damages attributable to punitive, exemplary and/or statutorily enhanced damages, including but not limited to, multiple damages.

*AGL-003 10/10*

71.     There is no coverage under the 2012 Policy for claims of punitive damages against the Shields Entities, Shields Counter-Defendants, and/or BSC.

### VI.
### CONCLUSION

72.     Pursuant to the policy provisions, there is no coverage under the Policies for the claims asserted against Shields Entities. Shields Counter-Defendants, and BSC because one or more of the terms, limitations, conditions, and/or exclusions discussed above apply.   The claims by Walsh and Dominque, as well as the Conkling Lawsuit, were never tendered to Atlantic

Casualty, precluding coverage.  Not all of the Shields Entities, Shields Counter-Defendants, and members of BSC tendered the claims in the Harris County Lawsuit and Galveston Lawsuit to Atlantic Casualty, which precludes coverage for the non-tendering entities/persons and claims against such persons/entities.  The Policies only apply to damages a qualifying insured must pay because of an "occurrence" resulting in "property damage," which are not alleged in the Galveston Lawsuit, Harris County Lawsuit, and/or Conkling Lawsuit.

73.     The Policies do not cover the work of subcontractors, which were allegedly used on the Hubbard/Jurgena property, if they are not adequately insured.  Despite its requests, Atlantic Casualty was never provided information confirming the subcontractors used by Arnold Shields were adequately insured.  Thus, any alleged damages are precluded from coverage. Further, the Policies contain exclusions and limitations of coverage and the policies are not a warranty of an insured's work, nor are they a performance bond.  As a result, Atlantic Casualty seeks a declaration that it has no duty to defend or indemnify the Shields Entities, Shields Counter-Defendants, and/or BSC for any of the claims asserted in the Galveston Lawsuit, Harris County Lawsuit, and/or Conkling Lawsuit under the Policies.   Atlantic Casualty also seeks a declaration that it has no duty to indemnify Hubbard, Jurgena, Cox, Tomaiolo, Dominque, Walsh, Scott Conkling, and Melissa Conkling under the Policies for the Galveston Lawsuit claims, Harris County Lawsuit claims, and/or Conkling Lawsuit claims.

**VII.**
**PRAYER**

For the reasons set forth above, Atlantic Casualty Insurance Company asks for judgment against defendants for:

a.      A declaration that Atlantic Casualty owes no duty to defend or indemnify Arnold "Blu" Shields a/k/a Arnold Leo Shields a/k/a Blu Shields, Arnold Shields d/b/a Galveston Service Company, Arnold Shields d/b/a Blu Shields Construction, Blu

Shields Construction, LLC, Galveston Service Company, Rose Patricia Ann Shields, Oscar Urbina, and Patrick Henderson under the Policies against the allegations made in the Galveston Lawsuit, Harris County Lawsuit and Conkling Lawsuit against them;

b.     A declaration that Atlantic Casualty owes no duty to indemnify Hubbard, Jurgena, Cox, Tomaiolo, Walsh, Dominque,  Scott Conkling, and Melissa Conkling under the Policies for the allegations made in the Galveston Lawsuit, Harris County Lawsuit, and Conkling Lawsuit;

c.     Costs of court;

d.     Interest allowed by law for prejudgment or post-judgment interest; and

e.     Reimbursements and all other relief the Court deems proper.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By:  _Camille Johnson_
     Camille Johnson
     State Bar No. 10686600
     6440 N. Central Expressway, Suite 107
     Dallas, Texas  75206
     Phone: (214) 368-1515
     Fax: (214) 292-9647
     Email: camille@ssjmlaw.com

ATTORNEY FOR PLAINTIFF